IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| WILLIAM McKINZIE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>LATOYA HUGHES, in her individual capacity and official capacity as the Director of the Illinois Department of Corrections,<br><br>    Defendant. | No. 3:24-cv-50363 |

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff William McKinzie, individually and on behalf of all others similarly situated, respectfully requests that this Honorable Court enter a preliminary injunction prohibiting the Illinois Department of Corrections ("IDOC") from continuing to enforce its policy of refusing to release from prison individuals who have completed their terms of imprisonment and been approved by the Prisoner Review Board ("PRB") for release on MSR but cannot afford to obtain housing.

**INTRODUCTION**

William McKinzie has completed his court-ordered term of incarceration and is legally entitled to release on to Mandatory Supervised Release ("MSR"). Yet, he remains in prison more than eight months beyond the time he was sentenced to serve because he is unable to secure an approved "host site" at which to live while on MSR. Plaintiff is indigent and thus unable to rent or buy a place to live. He has

been informed by IDOC officials that there are no halfway houses that will accept an individual with an arson conviction. The Department will not release an individual who is homeless on to MSR. Thus, the Department has opted to keep McKinzie in prison even though he has already completed his prison sentence. In the absence of injunctive relief, McKinzie will remain imprisoned until he serves his entire MSR period in prison (until August 18, 2026).

Plaintiff asks this Court to enjoin enforcement of the IDOC's host site policy because it violates the Fourteenth Amendment's Equal Protection Clause and the Eighth Amendment.

## FACTUAL BACKGROUND

### I. Prior Litigation

Courts in this district have held in three different cases that it is unconstitutional to hold an individual in prison beyond the time he was sentenced to serve solely because he cannot afford to obtain a host site that meets Department approval.

First, the plaintiffs in *Murphy v. Raoul,* 16-cv-11471, challenged the constitutionality of the "host site" requirement as it was being applied to individuals with sex offense convictions sentenced to "three years to life" on MSR. A court in this district certified the case as a class action and on March 31, 2019, granted summary judgment on the plaintiffs' claim that the IDOC's host-site requirement violates the Equal Protection Clause and the Eighth Amendment because the continued imprisonment of individuals who are unable to afford

2

housing "punish[es] the plaintiffs for their indigency and homelessness, matters totally beyond their control." *Murphy v. Raoul*, 380 F. Supp. 3d 731, 756 (N.D. Ill. 2019). Pursuant to a permanent injunction entered in *Murphy*, the Department created a transitional housing program called the Intensive Community Reintegration Program ("ICRP") for persons with sex offense convictions so that members of the class would not be detained in prison beyond the completion of their court-ordered sentence of imprisonment due to an inability to meet the host site requirement. *See Murphy*, 16-cv-11471, ECF No. 262, IDOC Compliance Report.

Second, the plaintiffs in *Barnes v. Jeffreys*, 20-cv-2137, challenged the constitutionality of the "One-Per-Address Statute," 730 ILCS 5/3-3-7(a)(7.6), a section of the Illinois Code of Corrections which requires individuals on MSR for sex offenses to "refrain from residing at the same address … with another … convicted sex offender." The court certified the case as a class action and on March 26, 2021, granted summary judgment on the plaintiffs' claim that the One-Per-Address Statute violates the Equal Protection Clause and the Eighth Amendment. *Barnes v. Jeffreys*, 529 F. Supp. 3d 784 (N.D. Ill. 2021). The Court found that the One-Per-Address Statute "operates to keep indigent and homeless sex offenders incarcerated beyond their term of imprisonment and is unconstitutional under the Eighth Amendment." *Id*. at 795.

Third, the plaintiffs in *Stone v. Jeffreys*, 21-cv-5616, challenged the constitutionality of the "host site" requirement as applied to individuals with sex offense convictions sentenced to determinate periods of MSR (as opposed to

3

indeterminate "three-to-life" terms which the aforementioned *Murphy* case addressed). Again, the court certified the case as a class action and on August 30, 2022, granted the plaintiffs a preliminary injunction. *Stone v. Jeffreys*, No. 21 C 5616, 2022 U.S. Dist. LEXIS 180228 (N.D. Ill. Aug. 30, 2022). Pursuant to this injunction, the Department expanded the ICRP to ensure members of the *Stone* class would not be detained in prison beyond the completion of their court-ordered sentence of imprisonment due to an inability to meet the host site requirement. *See Stone*, 21-cv-5616, ECF No.129, IDOC Compliance Report.

As a result of the injunctive relief entered in *Murphy*, *Barnes* and *Stone*, the ICRP now provides housing for individuals with sex offense convictions who cannot secure their own housing at which to reside while on MSR. But no similar program exists for persons with arson convictions who cannot secure housing.

Plaintiff McKinzie and the class he seeks to represent in this case are similarly situated to the plaintiffs in *Murphy, Barnes* and *Stone*: (1) they have completed their terms of imprisonment and are legally entitled to be released from prison on MSR; (2) they are subject to the IDOC's policies which require them to obtain a host site before they are released from prison; and (3) they remain imprisoned because they are unable to afford housing that meets IDOC approval and there is no transitional housing that will accept them. In the absence of injunctive relief, they will remain imprisoned until they serve their entire MSR term behind bars, similar to the members of the *Stone* class.

4

## II. Relevant Provisions of Law and Illinois Policy

### A. Illinois Mandatory Supervised Release Scheme

Every person sentenced to a period of imprisonment in the IDOC is also sentenced to a separate term of post-incarceration community supervision called "mandatory supervised release." 730 ILCS 5/5-8-1 (d). MSR is similar to parole in some respects—*e.g.*, it is meant to serve as a period of post-incarceration supervised reintegration to the community. But the two schemes differ in one key respect: parole is early release from prison on an incomplete prison sentence, and the decision whether to release someone on parole is entirely discretionary. MSR is, as its name implies, "mandatory," and it starts automatically upon completion of a prison sentence. *See People v. Younger*, 2015 IL App (1st) 130540-U, ¶ 15 (Ill. App., 2015) ("the MSR term is not a negotiated release or a privilege but, rather, a mandatory part of defendant's sentence."); *Samson v. California*, 547 US 843, 850 (2006) ("The essence of parole is release from prison, before the completion of sentence. ... Federal supervised release, in contrast ... is meted out in addition to, not in lieu of, incarceration.") (internal citations omitted)).

Courts in this district have recognized that persons imprisoned in the IDOC have a constitutionally protected liberty interest in release from prison on to MSR after completion of their sentences of imprisonment. *See Murphy*, 380 F. Supp. 3d at 760 (concluding that "the language and structure of the supervised release system in Illinois creates an expectancy of release, which would entitle releasees to conditional liberty" once the PRB "granted the plaintiffs their release.")

5

**B. The IDOC Will Not Release a Person Who Is Homeless on to MSR**

In order to be released from the physical custody of an IDOC facility at the completion of their court-imposed sentences of incarceration, Plaintiff McKinzie and others similarly situated to him must identify a "host site" that meets the approval of the Department at which to reside while on MSR.

There is no Illinois statute that makes it illegal for an individual to be homeless while on MSR. Yet, as a matter of policy and practice, the IDOC will not release from prison on to MSR any person who is homeless. Specifically, IDOC Administrative Directive 04.50.110, "Release Plans," provides that all persons being released from prison on to MSR must identify an "acceptable host site" at which to reside while on MSR. *See* Ex. 1, Admin. Dir. 04.50.110, §I. The Department's Field Services division is responsible for investigating and approving or denying prisoners' proposed host sites, which may include a site visit and inspection. *Id*. If the individual is unable to identify an acceptable site that meets Department approval, the Department's Parole Re-Entry Group ("PRG") is tasked with assisting the individual with identifying a host site. *Id.*

However, if neither the individual in custody nor the PRG identifies an acceptable host site, the individual will be denied release on to MSR when he completes his term of imprisonment. Historically, this has been referred to as being "violated at the door"—meaning that the individual is considered to be in violation of the terms of his MSR by not having an approved place to live, even though he has

6

never been released on to MSR at all. *Cordrey v. Prisoner Review Bd.*, 2014 IL 117155, ¶ 10, 386 Ill. Dec. 660, 663.

It is Plaintiff McKinzie's understanding based on his conversations with Field Services officials at Dixon Correctional Center that there are currently no beds available in state-funded halfway houses in Illinois that will accept a person with an arson conviction.

### III. Facts Pertinent to Plaintiff McKinzie

Plaintiff William McKinzie (IDOC No. K69631) is currently imprisoned at Dixon Correctional Center. He was convicted in 2012 of aggravated arson and attempted murder and sentenced to serve six years in the IDOC. In 2014 he was convicted of aggravated battery to a peace officer and sentenced to serve an additional three years in the IDOC. With statutory sentence credits, Mr. McKinzie completed his sentence of incarceration and was deemed eligible to be released onto MSR by the Prisoner Review Board on January 30, 2024. Ex. 2, McKinzie Individual in Custody Information.

Instead of being released when he finished his sentence, Mr. McKinzie was "violated at the door," meaning that he was not released because he was deemed to be in violation of the host site requirement. Mr. McKinzie is indigent. He has no family members who are willing or able to assist him with obtaining housing. Due to his inability to secure housing, he will be forced to remain in prison until he "maxes out" his MSR term (*i.e.,* serves the entirety of his MSR period in prison) on August 18, 2026. Ex. 2 (showing projected discharge date of August 18, 2026).

7

Pursuant to Department policy, Field Services is responsible for investigating and approving prisoners' MSR host sites. McKinzie has spoken with Field Services representatives at Dixon Correctional Center to explain his situation and ask for placement in a halfway house. Field Services has explained to him that halfway houses will not accept him due to his conviction for arson. According to Field Services employees, halfway houses have a right to reject persons with arson convictions. Under the Department's policy, if an imprisoned person is unable to obtain housing, the Department's Parole Re-Entry Group is supposed to help the person identify a housing plan, such as placement in a halfway house. Mr. McKinzie has asked the Parole Re-Entry Group to help find him a halfway house and has filed a grievance regarding his continued incarceration. To date, the Parole Re-Entry Group has been unable to identify a halfway house for Mr. McKinzie.

Mr. McKinzie does not want to remain in prison during his MSR term and seeks release to the community to complete his period of supervision.

## ARGUMENT

In order to obtain a preliminary injunction, the moving party must show "some likelihood of succeeding on the merits" and "that [he] has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022) (citations omitted). If the movant makes this threshold showing, then the district court must consider two additional factors: "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the

8

irreparable harm to the moving party if relief is denied" and "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id*. The district court must "equitably weigh these four factors together to determine if a preliminary injunction is warranted." *Id*.

In the analysis below, Plaintiff shows that all four of these factors weigh in favor of granting an injunction requiring the Department to release Mr. McKinzie from prison and halt its policy of imprisoning homeless and indigent parolees during their MSR periods.

### I. Plaintiff Has a Likelihood of Success on the Merits of his Claim that the Department's Host Site Policy Violates the U.S. Constitution

The Department's policy violates the constitutional rights of the named Plaintiff and others similarly situated because, as a court in this district held in *Murphy* and *Stone*, the continued imprisonment of individuals who do not have the money or outside support to comply with the host-site requirement violates the Equal Protection Clause and Eighth Amendment because it "discriminates against the plaintiffs because of their poverty." *Murphy*, 380 F. Supp. 3d at 755.

**A. The IDOC's Host-Site Policy Violates the Equal Protection Clause**

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). There are two primary ways an equal protection violation occurs. One is when the disparate treatment among similarly situated groups results in the denial of a fundamental right. The other is when disparate treatment among similarly situated groups is based on a person's membership in a "suspect" class.

9

*Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Plaintiff's equal protection claim rests on the first theory—namely, that the IDOC's host-site policy denies Plaintiff and others similarly situated the fundamental right to be free from confinement based solely on their indigence. Where a challenged restriction impinges on a fundamental right, it is subject to strict scrutiny and can only survive if it is "suitably tailored to serve a compelling state interest." *Cleburne* at 440; *see also Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006) ("Government action [that] interferes with a person's fundamental rights" is subject to strict scrutiny.)

In *Murphy*, a court in this district found that continued imprisonment of indigent individuals who cannot afford housing violated the Equal Protection Clause because it "creates an illegal classification based on wealth, which indefinitely deprives the class members of their liberty as a result of their incapacity to pay." 380 F.Supp.3d at 759. Similarly in *Stone*, the court held that "Plaintiffs have a likelihood of succeeding on a claim that their continued imprisonment is an improper classification based on wealth that violates the Equal Protection Clause [because] due to their indigence, they are denied the right to be released from confinement at the end of their sentences of incarceration." *Stone*, 2022 U.S. Dist. LEXIS 180228, at *8.

The same result should occur here. Whether applied to persons with convictions for sexual offenses or arson offenses, the host-site policy fails strict scrutiny because it draws a wealth-based classification that deprives indigent individuals of a

10

fundamental right (*i.e.*, the right to be released from prison after the completion of one's sentence) and is not suitably tailored to serve any compelling interest.

1. **There Is a Fundamental Right to Freedom from Bodily Restraint**

The Supreme Court has repeatedly recognized that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the due process clause] protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *Demore v. Kim*, 538 U.S. 510 (2003) (the constitution "permits detention only where 'heightened, substantive due process scrutiny' finds a 'sufficiently compelling' governmental need.") (*quoting United States v. Salerno*, 481 U.S. 739, 748 (1987)); *Reno v. Flores*, 507 U.S. 292, 316 (1993) (O'Connor, J., concurring) ("The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny.")

The fact that Plaintiffs have a term of MSR after their sentence of imprisonment does not negate their liberty interest in release into the community. In *Murphy*, the court recognized that individuals in IDOC custody have a protectable "liberty interest" in release from prison on to MSR once the Prisoner Review Board has approved them for release. *Murphy*, 380 F. Supp. 3d 731, 760 (N.D. Ill. 2019) (concluding that "the language and structure of the supervised release system in Illinois creates an expectancy of release, which would entitle releasees to

11

conditional liberty" once the PRB "granted the plaintiffs their release."); *see also Murdock v. Walker,* No. 08 C 1142, 2014 WL 916992, at *6 (N.D. Ill. Mar. 10, 2014) (After the PRB approved prisoners for release "that approval [becomes] a form of statutory liberty..."). Similarly, courts have recognized that "a person serving a sentence of probation or parole in the community has a limited liberty interest in his freedom that cannot be curtailed without the procedural protections of notice and hearing." *Werner v. Wall*, 836 F.3d 751, 760 (7th Cir. 2016) (*citing Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

## 2. The IDOC's Host-Site Policy Discriminates Based on Wealth

The IDOC's policy discriminates against the poor by making it impossible for indigent individuals to secure their release from prison after completing their prison sentences. Plaintiff McKinzie is currently serving, and will continue to serve, time in prison beyond the completion of his prison sentence solely because of his inability to afford housing that IDOC will approve, the lack of any housing for indigent persons, and IDOC's refusal to release persons who are homeless.

The Supreme Court has repeatedly struck down practices that deprive a person of liberty because of indigency. In *Griffin v. Illinois*, 351 U.S. 12 (1956), the Court found that an Illinois rule permitting a criminal appeal only if a defendant could pay for a trial transcript violated due process and equal protection. Likewise, in *Williams v. Illinois*, 399 U.S. 235 (1970), the Court overturned an Illinois law that permitted extended prison sentences beyond the statutory maximum for those prisoners who could not pay a fine, writing that "[o]nce the State has defined the

12

outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." *Id.* at 241-42. In its recent decision in *Grants Pass*, the Supreme Court again recognized that the Equal Protection Clause places "limits on what governments in this country may declare to be criminal behavior and how they may go about enforcing their criminal laws" and recognized the viability of an equal protection claim where laws "invidiously discriminate between persons." *City of Grants Pass v. Johnson*, 144 S. Ct. 2202, 2215 (2024).

### 3. The Wealth-Based Distinction Does Not Serve a Compelling Government Interest

As the court held in *Murphy*, keeping "homeless sex offenders locked up (while non-indigent sex offenders roam free) has no reasonable relation to public protection. Quite the contrary, 'the condition at issue here—indigency—is itself no threat to the safety or welfare of society.'" 380 F. Supp. 3d at 756-57 (*quoting Bearden v. Georgia*, 461 U.S. 660, 669 n. 9 (1983)).

The IDOC's host site policy produces the same type of discrimination condemned by the Supreme Court in *Griffin* and by the court in *Murphy*—wealth-based discrimination that deprives individuals of their fundamental rights solely because of their indigency. Thus, Plaintiff is entitled to preliminary injunctive relief prohibiting continued enforcement of the IDOC's host-site policy to keep him imprisoned beyond the time he was sentenced to serve.

## B. The IDOC's Enforcement of the Host Site Requirement Violates the Eighth Amendment

The Eighth Amendment "imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667-668 (1977) (internal citations omitted). In particular, the Eighth Amendment forbids the government from "enforcing laws that criminalize 'a mere status.'" *Grants Pass*, 144 S. Ct. at 2219 (citing *Robinson v. California*, 370 U.S. 660 (1962*); Powell v. Texas*, 392 U.S. 514 (1968)).

In *Grants Pass*, the Supreme Court held that the Eighth Amendment is not the proper vehicle for challenges to "laws that don't proscribe status as such but that proscribe acts, even acts undertaken with some required mental state, the defendant cannot help but undertake." *Grants Pass*, 144 S. Ct. at 2219. However, the Court recognized the continuing viability of Eighth Amendment claims where a government creates "status crimes," *e.g.*, making it illegal to be homeless or addicted to narcotics. *Id*. at 2223.

In *Stone* and *Murphy*, the court found that the IDOC's policy of imprisoning individuals beyond the time they were sentenced to serve if they are homeless constitutes a violation of the Eighth Amendment because "[a] revocation of supervised release (or here, a decision not to release) … is analogous to a criminal prosecution of a status offense." *Stone*, 2022 U.S. Dist. LEXIS 180228, at *3 (*citing Murphy* 380 F. Supp. 3d at 765).

The same result should occur here. As in *Murphy* and *Stone*, the IDOC's policy criminalizes the status of homelessness. Mr. McKinzie is imprisoned not because of

14

any action he took, but solely because he is homeless and the IDOC's policy forbids homelessness while on MSR.

For all of these reasons, Plaintiff also has a likelihood of success on his claim that the IDOC's host-site policy violates the Eighth Amendment.

## II. Plaintiff Is Suffering Irreparable Harm

Plaintiff lacks an adequate remedy at law and will suffer irreparable harm in the absence of injunctive relief. Every day since January 30, 2024, he has remained in prison beyond the time he was sentenced to serve. If an injunction is not granted, he will remain wrongfully imprisoned until August 2026.

It is well established that extended imprisonment constitutes irreparable harm. *See, e.g.*, *Stone*, 2022 U.S. Dist. LEXIS 180228, at *5-6 ("Class members are in prison despite reaching the end of their sentence of incarceration because they cannot afford compliant housing. Absent injunctive relief, they will continue to be imprisoned, which constitutes an irreparable harm."); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017) ("[A]dditional incarceration without penological justification" violates the Eighth Amendment).

Moreover, after-the-fact damages are an inadequate remedy for an ongoing deprivation of constitutional rights. *Ezell v. City of Chi.*, 651 F.3d 684, 699 (7th Cir. 2011) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (quoting 11A Charles Alan Wright *et al.*, *Federal Practice & Procedure* §2948.1 (2d ed.

1995)); *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm.").

Because Plaintiff is suffering and will continue to suffer continued imprisonment in the absence of injunctive relief, he has established irreparable harm.

### III. The Balance of Harms Favors Plaintiff and an Injunction Would Not Harm the Public Interest

The final factors in the preliminary injunction analysis require a balancing of the harms that the parties will suffer if an injunction is granted or denied and consideration of the public interest. *Int'l Ass'n of Fire Fighters*, 56 F.4th at 446.

These factors also favor Plaintiff. While Plaintiff is suffering significant harm due to his continued imprisonment, the Department of Corrections has no legitimate interest in keeping Mr. McKinzie in prison beyond the time he was sentenced to serve.

Likewise, the public interest will not be harmed by the granting of preliminary injunctive relief. This is so for at least four reasons.

First, there is no public safety justification for refusing to release Plaintiff simply because he is indigent and homeless. *See Murphy*, 380 F.Supp. 3d at 756-57 ("indigency is itself no threat to the safety or welfare of society.") (cleaned up).

Second, Plaintiff does not presume to tell the IDOC how to carry out its constitutional obligation to release Plaintiff and others similarly situated from prison upon the completion of his sentence of incarceration. The IDOC has the power and responsibility to impose conditions of monitoring and supervision necessary to mitigate the risk of re-offense and protect public safety. Such

16

conditions may include GPS monitoring, curfews, a requirement to remain in a particular jurisdiction, frequent check-ins with a parole agent, and attendance at therapy. If the IDOC wants Plaintiff to reside in rehabilitative housing in the community during his term of MSR, it is free to create such housing, as it has done for the members of the *Murphy* and *Stone* classes.

Third, the public interest is served by the granting of preliminary injunctive relief because, as the court observed in *Barnes*, "accommodating the right [to release on MSR] will positively impact prison resources [because] … the average annual cost of keeping a person incarcerated in an IDOC facility [is] $30,419 … [whereas] the average cost to the State of supervising a parolee on release in the community is approximately $2,000/year." *Barnes v. Jeffreys*, No. 20 C 2137, 2021 U.S. Dist. LEXIS 57432, at *30 (N.D. Ill. Mar. 26, 2021) (*citing Murphy*, 380 F. Supp. 3d at 749)).

Finally, the public has a strong interest in protecting constitutional rights that would be well served by granting injunctive relief here. *See ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional.")

## CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that this Honorable Court grant him a preliminary injunction.

        Respectfully submitted,

        <u>/s/ Adele D. Nicholas</u>
        <u>/s/ Mark G. Weinberg</u>
        *Counsel for Plaintiff*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net